Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 8966 | **DATE** | 6/25/2004 |
| **CASE TITLE** | QUEEN A. TIYE SEARLES vs. BD OF ED OF THE CITY OF CHGO, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Gwendolyn Boyd's motion to dismiss [doc. no. 18-1] is granted. All claims against defendant Boyd are dismissed with prejudice.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | JUN 29 2004 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | docketing deputy initials | 26 |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | |
| | Copy to judge/magistrate judge. | | |
| CG | courtroom deputy's initials | 2004 JUN 25 PM 4:00 | date mailed notice |
| | | date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| QUEEN A. TIYE SEARLES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BOARD OF EDUCATION OF THE CITY OF CHICAGO/CHICAGO SCHOOL REFORM BOARD OF TRUSTEES; MICHAEL SCOTT; ARNE DUNCAN, individually and in his official capacity; WENDY HAAS, individually and in her official capacity; GWENDOLYN BOYD, individually and in her official capacity; THOMAS LAMBERT, individually and in his official capacity, | ) ) ) ) ) ) ) ) ) ) ) | No. 03 C 8966<br><br>Judge Ronald A. Guzmán<br><br>**DOCKETED**<br>JUN 2 9 2004 |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on defendant Gwendolyn Boyd's motion to dismiss the complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). For the reasons that follow, the motion to dismiss is granted.[1]

---

[1] Plaintiff did not respond to the motion to dismiss, but her failure to do so was not, by itself, dispositive. While a plaintiff may choose to file a responsive brief, "[a] *pro se* plaintiff who has alleged well-pled facts supporting a claim for relief can withstand dismissal without responding to a motion to dismiss." *Curtis v. Bembenek*, 48 F.3d 281, 287 (7th Cir. 1995) (holding that a court need not inform a *pro se* plaintiff of the consequences of failing to respond to a motion to dismiss).



## FACTS

The following facts alleged in the complaint are assumed to be true for the purposes of this motion to dismiss.[2] *See Hickey v. O'Bannon*, 287 F.3d 656, 657 (7th Cir. 2002). Plaintiff Queen Tiye Searles was a regularly appointed tenured teacher and was employed by defendant Board of Education of the City of Chicago ("Board"). (Compl. ¶¶ 1, 7.) Defendant Boyd is the principal of John Marshall High School ("Marshall"), where Plaintiff worked as a teacher. (*Id.* ¶¶ 5, 7.)

Plaintiff allegedly collapsed in a classroom on April 24, 2003 due to a work-related stress disorder and returned to work on August 27, 2003. (*Id.* ¶ 22(b).) Plaintiff had previously been employed as an Accounting and Career Exploration Instructor. (*Id.* ¶ 26.) Plaintiff alleges that when she returned from leave in August 2003, her regular position was no longer available to her, and she was placed in a position as a mathematics instructor. (*Id.*) On September 12, 2003, as Plaintiff approached the office of the school to sign in, she was "accosted" by a security guard who told her she could not sign in at Marshall until further notice and that she must leave the building immediately. (*Id.* ¶ 8.) Plaintiff alleges that Boyd had banned Plaintiff from entering Marshall. (*Id.* ¶ 5.) Plaintiff told the guard that she had experienced an episode of dizziness before entering the building and that she could not drive for at least two hours. (*Id.* ¶ 9.)

Plaintiff then allegedly told the security guard that she must see Boyd to clarify the situation and that she must receive her paycheck before leaving. (*Id.*) Boyd presented Plaintiff with a copy of a September 10, 2003 letter faxed to her from the Board's Chief Executive Officer, defendant

---

[2] Plaintiff attaches several documentary exhibits to her complaint. In ruling on a motion to dismiss, courts may properly consider documents attached to a pleading that are central to a plaintiff's claim. *See Menominee Indian Tribe of Wis. v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1999).

2

Arne Duncan, requiring Plaintiff to submit to an examination by defendant Dr. Thomas Lambert, on September 17, 2003, in Justice, Illinois, for work behavior observed by Boyd, pursuant to Board Rule 4-54.[3] (*Id.* ¶ 10.) The letter stated that failure to report to the appointment would be grounds for termination. (Compl. Ex. C-1.) Boyd assured Plaintiff that the behavior she discussed with the Board was not related to Plaintiff's job performance but instead to medical concerns and the episodes of dizziness that Plaintiff experienced most often on the way to work. (Compl. ¶ 11.)

The letter from the Board did not state that Plaintiff was immediately discharged from duty pending the outcome of the medical examination. (*Id.* ¶ 12.) It stated that Boyd was authorized to record Plaintiff as "excused" for the appointment so she would suffer no salary loss. (Compl. Ex. C-1.) Plaintiff claims that Boyd told her that the Board told Boyd to relieve Plaintiff of her duties pending the medical examination. (Compl. ¶ 12.)

The letter advised that if Plaintiff had any questions, she should contact the director of the Bureau of Employee Health Services, defendant Wendy Haas. (Compl. Ex. C-1.) Plaintiff then contacted Haas and complained about being required to travel outside Chicago for her examination. (Compl. ¶ 13.) The evaluation was then changed to September 19, 2003, and the location was changed to 2525 S. Michigan Ave., Chicago, Illinois, but the doctor remained the same. (*Id.* ¶ 14.)

---

[3] The letter quoted Board Rule 4-54 as stating:

> If in the opinion of the Chief Executive Officer, or his designee, any employee of the Chicago Public Schools or the Chicago School Reform Board of Trustees is physically and/or mentally unfit to perform safely and/or efficiently his job duties, the Chief Executive Officer or his designee may require an appropriate health examination by a medical professional(s) selected by the Chief Executive Officer.

(Compl. Ex. C-1.)

3

The interview with Dr. Lambert, a clinical psychologist, took place as scheduled on September 19 and lasted approximately forty minutes. (*Id.*; Compl. Ex. C-8.)

On September 22, 2003, Haas told Plaintiff not to report to work and called again later the same day to tell Plaintiff that Dr. Lambert had concluded that Plaintiff should not return to work as a teacher. (Compl. ¶ 15.) Dr. Lambert submitted a report to Haas dated September 23, 2003, in which he concluded that Plaintiff was unfit for duty as a teacher.[4] (Compl. Ex. C-8.) On around September 24, 2003, Plaintiff received a letter from Haas dated September 22, 2003, notifying Plaintiff that: "[P]ursuant to Board policies and procedures, you are currently unfit to return to your duties as a Teacher. If you wish to present any medical evidence to contest Dr. Lambert['s] findings, then such documentation may be sent to my attention at the above captioned address." (Compl. ¶ 16; Compl. Ex. C-3.) The letter went on to state that as a result of Dr. Lambert's evaluation of Plaintiff, the Board "is placing you on a medical leave of absence effective September 22, 2003. Your Personal Illness leave has been approved from September 22, 2003 through September 23, 2005. Prior to you return to work, you will need to contact the Bureau of Employee Health Services." (Compl. Ex. C-3.)

Plaintiff states that no hearing was held regarding this matter, and in a letter to her dated October 21, 2003, an attorney for the Chicago Teachers Union advised Plaintiff that: ". . . I will demand that the Board provide you with a due process hearing to give you the opportunity to refute

---

[4] Dr. Lambert's evaluation stated that Plaintiff's "presentation is consistent with a diagnosis of [m]ajor depression, severe, psychotic features and panic disorder." (Compl. Ex. C-8.) He further opined that "[b]ased upon recent incidents . . . and a very limited social support system, there is some risk for her to act out aggressively either toward herself or others. . . . Without intensive psychiatric treatment, it is highly unlikely that she would be able to function adequately in her position." (*Id.*)

4

the finding that you are unfit." (Compl. ¶ 17; Compl. Ex. C-4.) The letter also recommended that Plaintiff get a second opinion about her fitness for duty and stated that the second opinion could come from Plaintiff's treating psychologist, Dr. Dianne Glenn. (Compl. Ex. C-4.) The letter advised that Dr. Glenn should be provided with a copy of Dr. Lambert's assessment and explained how Plaintiff could receive a copy of the report if she did not already have one. (*Id.*)

Plaintiff argues that as a result of Dr. Lambert's evaluation, which she claims is false and unsubstantiated, she is on a wrongful unpaid medical leave of absence. (Compl. ¶ 18.) Plaintiff complains that she has been given neither details about what acts she committed to warrant the Board 4-54 evaluation nor specific reasons for which she was found unfit for duty following the evaluation. (*Id.* ¶¶ 19-20.) She further complains that Haas's September 22, 2003 letter did not cite a particular rule, policy, or procedure that would allow her to be "arbitrarily and capriciously" required to submit to the examination and then discharged without pay without an opportunity to be heard or to appeal. (*Id.* ¶ 21.)

Plaintiff attaches to her complaint two evaluations, one from a psychiatrist and one from her psychotherapist, Dr. Glenn, which conclude that Plaintiff does not exhibit a psychotic disorder but that she may have a stress or anxiety disorder. (*Id.* ¶ 22(g); Compl. Exs. 5-7.) The Complaint does not allege whether these evaluations were forwarded on to any of the defendants.

Plaintiff alleges that Defendants' actions were "fraudulent, illegal, unconstitutional, tyrannical, willful and wanton and made in Bad Faith [sic]." (Compl. ¶ 22(h).) Plaintiff further alleges that the defendants denied Plaintiff due process because the law provides for no appeal or review of their decision. In Count I of the Complaint, Plaintiff seeks a Writ of Certiorari from this Court to review and set aside Defendants' decision.

Count II alleges violations of due process under the Illinois Constitution and the Fourteenth Amendment of the U.S. Constitution, presumably pursuant to 42 U.S.C. § 1983. Plaintiff claims that she was denied due process because the defendants failed to provide her with proper notice and an opportunity to be heard or defend against being removed from her teaching position and placed on a mandatory two-year unpaid leave. Specifically, Plaintiff claims each defendant abused his or her discretionary power by: (1) requiring Plaintiff to submit to the Board Rule 4-54 medical examination without required notice specifying due cause; (2) not giving Plaintiff a reasonable written warning stating with particularity causes which, if not removed, may result in the initiation of dismissal charges; (3) not warning Plaintiff in advance so as to give her a reasonable time to effect a plan to remediate the alleged psychological deficiencies; (4) removing Plaintiff without pay immediately, without a majority vote of all members of the Board; and (5) removing Plaintiff from her position as a tenured teacher in willful and wanton violation of the Teacher Tenure Law, which sets out the specific process for dismissing or removing teachers. (*Id.* ¶ 25; *see also id.* ¶ 27 (quoting Teacher Tenure Law); *id.* ¶¶ 28-29 (describing statutory requirements that must be met before dismissing a teacher).)

The Complaint seeks the following relief: (1) a finding that her "due process rights to life, liberty, property and the pursuit of happiness have been denied contrary to the Fourteenth Amendment to the United States Constitution, the Illinois School Code, and [t]he Teacher Tenure Law"; (2) an order reversing the decision to remove Plaintiff from her position as a teacher "as illegal, against the manifest weight of evidence, and null and void"; (3) an order providing "that all references to these matters be expunged from Plaintiff's personnel files maintained by all Defendants"; and (4) money damages, costs and fees, and other equitable relief.

6

## DISCUSSION

A motion to dismiss under subsection of Rule 12(b)(6) may be granted only if it appears that Plaintiff can prove no set of facts entitling her to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Barnhardt v. United States*, 884 F. 2d 285, 296 (7th Cir. 1989). Pro se complaints are held to less stringent standards than those drafted by lawyers, and they must be read liberally. *See Henderson v. Sheahan*, 196 F.3d 839, 845-46 (7th Cir. 1999); *Hudson v. McHugh*, 148 F.3d 859, 864 (7th Cir. 1998). Nevertheless, "a *pro se* complainant can plead himself out of court by pleading facts that undermine the allegations set forth in his complaint." *See Henderson*, 196 F.3d at 846.

### A. Official Capacity

Defendant Boyd first argues that the suit against her in her official capacity should be dismissed as duplicative of the suit against the Board. It is well settled that suits against individuals in their official capacity are actually suits against the local government unit itself. *See Munoz v. Chicago Sch. Reform Bd. of Bd. of Trs.*, No. 99 C 4723, 2000 WL 152138, at *8 (N.D. Ill. Feb. 4, 2000). Thus, where the local government unit is also a defendant in the suit, the claim against the individual in her official capacity is redundant. *See Moore v. Bd. of Educ. of City of Chicago*, 300 F. Supp. 2d 641, 646 (N.D. Ill. 2004). Accordingly, the motion to dismiss is granted with prejudice as to defendant Boyd in her official capacity.

### B. Individual Capacity

The complaint alleges the following actions by Boyd: (1) she reported to the Board her concerns about Plaintiff that led to the Board's requiring a medical examination of Plaintiff; (2) she advised Plaintiff that the Board had told Boyd to relieve Plaintiff of her duties pending the outcome

of the medical evaluation; and (3) Boyd barred Plaintiff from entering Marshall. Boyd argues that these allegations are insufficient as a matter of law to charge a violation of § 1983.

In any § 1983 action, a plaintiff must "[f]irst . . . allege that some person has deprived [her] of a federal right. Second, [s]he must allege that the person who has deprived [her] of that right acted under color of state or territorial law." *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)). A plaintiff alleging a procedural due process violation "must show a deprivation of a constitutionally protected interest and that the deprivation was achieved by means of constitutionally insufficient procedures." *Bogosian v. Bd. of Ed. of Cmty. Unit Sch. Dist. 200*, 134 F. Supp. 2d 952, 962 (N.D. Ill. 2001). Individual liability under § 1983 is "'predicated upon fault. An *individual* cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation.'" *Jenkins v. Keating*, 147 F.3d 577, 583 (7th Cir. 1998) (quoting *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983) (emphasis in original). "A causal connection, or an affirmative link, between the misconduct complained of and the official sued is necessary." *Wolf-Lillie*, 699 F.2d at 869. According to Boyd, her actions were merely ministerial in nature and thus did not cause the alleged constitutional deprivation. *See Jenkins*, 147 F.3d at 583.

The Court agrees that Boyd did not cause the alleged constitutional deprivation, because the Board, not Boyd, terminated Plaintiff. *See* 105 Ill. Comp. Stat. § 5/34-8.1 ("The right to employ, discharge, and layoff shall be vested solely with the board."). Likewise, the procedural defects in the Complaint relate to the *Board's* alleged failures to give Plaintiff notice, reasons for dismissal, and a proper hearing. *See* 105 Ill. Comp. Stat. § 5/34-85 (describing the procedures by which the Board can dismiss a teacher for cause). Boyd's alleged actions, on the other hand, were purely ministerial, and therefore the Complaint does not state a claim for individual liability under § 1983.

## CONCLUSION

For the foregoing reasons, Gwendolyn Boyd's motion to dismiss [doc. no. 18-1] is granted. All claims against defendant Boyd are dismissed with prejudice.

**SO ORDERED.**  ENTERED: 6/25/04

*Ronald A. Guzman*

**HON. RONALD A. GUZMAN**
**United States Judge**